A. David Youssefyeh (185994)
    david@adylaw.com
ADY Law Group, P.C.
1925 Century Park East, Suite 220
Los Angeles, California  90067
Tel:    (310) 772-2872

Rob D. Cucher (219726)
    cucherlaw@msn.com
Cucher Law, P.C.
9454 Wilshire Blvd Ste 600
Beverly Hills, CA 90212
Tel:    (310) 795-5356

Attorneys for Plaintiff,
MEGAPHOTON, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEGAPHOTON, INC., a Chinese corporation<br><br>        Plaintiff,<br><br>            vs.<br><br>VISIONTECH GROUP, INC., a California Corporation; HYDROMAN, INC., a California Corporation; NATURE'S MIRACLE, INC., a Delaware Corporation; and DOES 1 through 50, inclusive<br><br>        Defendants. | Case No.<br><br>**COMPLAINT**<br><br>1.  **BREACH OF CONTRACT**<br>2.  **BREACH OF CONTRACT**<br>3.  **OPEN BOOK ACCOUNT**<br>4.  **OPEN BOOK ACCOUNT**<br>5.  **ACCOUNT STATED**<br>6.  **ACCOUNT STATED**<br>7.  **FRAUD IN THE INDUCEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

– 1 –

## INTRODUCTION

1.    This is a very simple collections case, for years, Defendant Visiontech Group, Inc. purchased and received products, on credit, from Plaintiff. By Fall of 2022, because Visiontech was unable to pay the balance due, Plaintiff entered into an agreement with Defendant Visiontech Group, Inc. and Defendant Nature's Miracle, Inc., wherein Defendant Visiontech promised to make a series of payments to pay off the balance due Plaintiff and in order to induce Plaintiff to enter into the agreement and forego its rights, Defendant Nature's Miracle, Inc. agreed to guarantee the payments to Plaintiff in case Defendant Visiontech fails to make any of them.

2.    In the meantime, Defendant Hydroman, Inc., which had also been buying products from Plaintiff on credit, was also unable to pay off the balance due on its account. Consequently, Plaintiff entered into an agreement with Defendant Hydroman wherein Defendant Hydroman promised to make a series of payments to pay off the balance due Plaintiff and in order to induce Plaintiff to enter into the agreement and forego its rights, Defendant Nature's Miracle, Inc. agreed to guarantee the payments to Plaintiff in case Defendant Hydroman fails to make any of them.

3.    To date, however, neither Defendant Visiontech nor Defendant Hydroman has made a single payment to Plaintiff while Defendant Nature's Miracle has also failed to honor its guarantee of both debts. Consequently, Plaintiff has been left with no other option but to bring this action in order to protect its rights and to enforce their multiple promises.

## PARTIES

4.    Plaintiff is a corporation organized and existing under the laws of China, with its principal place of business located in Guangdong Province, China.

5.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendant Visiontech Group, Inc. ("Visiontech") was, and is, a California corporation with its principal place of business located in the County of San Bernardino, California.

6.      Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendant Hydroman, Inc. ("Hydroman") was, and is, a California corporation with its principal place of business located in the County of Orange, California.

7.      Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, Defendant Nature's Miracle, Inc. ("Nature's Miracle") was, and is, a Delaware Corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in the County of San Bernardino, California.

8.      The true names and capacities of the defendants DOES 1 through 50, inclusive, are unknown to Plaintiff who therefore sues these Defendants in their fictitious capacities. Plaintiff may amend this complaint to allege their true names and capacities when the same have been ascertained.

## FACTS

9.      For years, during trips to China or via sending purchase orders to China, Defendants Visiontech and Hydroman, Inc., purchased and received products, on credit, from Plaintiff.

10.      As of Fall 2022, Defendants owed Plaintiff the following sums:

    a.  Defendant Visiontech:

| Invoice Date | Amount(USD) |
|---|---|
| 4/12/22 | $  151,470.00 |
| 5/5/22 | $  321,940.00 |
| 5/19/22 | $  302,940.00 |
| 6/1/22 | $  128,304.00 |
| 6/1/22 | $  151,470.00 |
| 6/23/22 | $  136,800.00 |
|  | **$ 1,192,924.00** |

b. Defendant Hydroman:

| Invoice Date | Amount(USD) |
|---|---|
| 3/10/20 | $ 38,880.00 |
| | $ 328,251.00 |
| | $ 150,790.20 |
| | $ 106,480.00 |
| | $ 505,000.00 |
| 6/1/22 | $ 87,252.75 |
| 6/1/22 | $ 175,683.00 |
| | $ 31,868.86 |
| 6/1/22 | $ 114,393.17 |
| 6/1/22 | $ 168,148.40 |
| 6/1/22 | $ 66,733.29 |
| 6/1/22 | $ 132,640.82 |
| 6/1/22 | $ 303,095.59 |
| 6/1/22 | $ 388,300.06 |
| 3/10/20 | $ 138,240.00 |
| | $ 310,080.00 |
| | $ 54,720.00 |
| | $ 161,280.00 |
| 11/25/20 | $ 106,423.84 |
| 11/25/20 | $ 106,423.84 |
| 11./25/20 | $ 106,423.84 |
| 11/9/20 | $ 426,600.00 |
| | $ 639,900.00 |
| | $ 213,300.00 |
| | $ 639,900.00 |
| 11/11/20 | $ 197,100.00 |
| | $ 179,700.00 |
| **Total** | **$ 5,877,608.66** |

11.     As of Fall 2022, unable to pay the balance due, and in order to induce Plaintiff to forego any ligation to collect the balance due, and to induce Defendant Nature's Miracle to purchase the company prior to its merger into the SPAC "LBBB," Defendant Visiontech

– 4 –

COMPLAINT

reached out to Plaintiff in China[1] and entered into an agreement with Plaintiff wherein Defendant Visiontech promised to make a series of payments to pay off the balance due Plaintiff by the end of January 2023. In addition, and in order to induce Plaintiff to enter into the agreement, Defendant Nature's Miracle agreed to guarantee the payments to Plaintiff in case Defendant Visiontech failed to make any of them "Visiontech Agreement." A copy of this agreement is attached hereto as Exhibit A and incorporated herein by this reference.

12.     In the meantime, Defendant Hydroman who was also behind on its obligations to Plaintiff and in order to induce Plaintiff to forego any ligation to collect the balance due, and to induce Defendant Nature's Miracle to purchase the company prior to its merger into the SPAC "LBBB," reached out to Plaintiff, also in the Fall of 2022, in China[2] and entered into an agreement with Plaintiff wherein Defendant Hydroman promised to make a series of payments to pay off the balance due Plaintiff by the end of April 2023. In addition, and in order to induce Plaintiff to enter into the agreement, Defendant Nature's Miracle agreed to guarantee the payments to Plaintiff in case Defendant Hydroman failed to make any of them "Hydroman Agreement." A copy of this agreement is attached hereto as Exhibit B and incorporated herein by this reference.

13.     To date, however, neither Defendant Visiontech nor Defendant Hydroman has made a single promised payment while Defendant Nature's Miracle has failed to honor its promise to guarantee the payments.

14.     Consequently, Plaintiff has been forced to file this action to recover what it is rightfully owed to it.

## JURISDICTION & VENUE

15.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332, providing diversity jurisdiction over controversies where the matter in controversy exceeds

---

[1] The parties generally communicated via e-mail or via the app WeChat.
[2] The parties generally communicated via e-mail or via the app WeChat.

the sum of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that all of the named corporate Defendants have their principal place of business located in California and in this District.

## FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

### (Against Defendants Visiontech, Nature's Miracle and DOES 1-50)

17.     Plaintiff refers to paragraphs 1 through 16 of this Complaint and incorporates those paragraphs by reference as though fully set forth in this section.

18.     In or about November 2022, Plaintiff and Defendants entered into a written contract wherein Plaintiff agreed to forego exercising its rights in return for a series of payments by Defendant Visiontech ("Visiontech Agreement").

19.     Pursuant to said Visiontech Agreement, Plaintiff has performed all of the terms and conditions on its part to be performed. Any and all non-performance on Plaintiff's part was and is excused by the Defendants' acts, omissions and/or other conduct.

20.     Defendants breached said Visiontech Agreement by failing and refusing to pay the Plaintiff in accordance therewith.

21.     As a result, there is now a due owing and unpaid from Defendants to Plaintiff the sum of $1,192,924.00 together with interest thereon at the legal rate from and after November 1, 2022, pursuant to said Visiontech Agreement.

## SECOND CAUSE OF ACTION

### BREACH OF CONTRACT

### (Against Defendants Hydroman, Nature's Miracle and DOES 1-50)

22.     Plaintiff refers to paragraphs 1 through 16 of this Complaint and incorporates those paragraphs by reference as though fully set forth in this section.

23. In or about November 2022, Plaintiff and Defendants entered into a written contract wherein Plaintiff agreed to forego exercising its rights in return for a series of payments by Defendant Hydroman ("Hydroman Agreement").

24. Pursuant to said Hydroman Agreement, Plaintiff has performed all of the terms and conditions on its part to be performed. Any and all non-performance on Plaintiff's part was and is excused by the Defendants' acts, omissions and/or other conduct.

25. Defendants breached said Hydroman Agreement by failing and refusing to pay the Plaintiff in accordance therewith.

26. As a result, there is now a due owing and unpaid from Defendants to Plaintiff the sum of $5,664.242.56 together with interest thereon at the legal rate from and after November 1, 2022, pursuant to said Hydroman Agreement.

**THIRD CAUSE OF ACTION**

**OPEN BOOK ACCOUNT**

**(Against Defendants Visiontech, Nature's Miracle and DOES 1-50)**

27. Plaintiff refers to paragraphs 1 through 16 of this Complaint and incorporates those paragraphs by reference as though fully set forth in this section.

28. Plaintiff alleges that within the past four (4) years, Defendants Visiontech, Nature's Miracle and Does 1-50 became indebted to Plaintiff on an open book account for a balance due in the sum of $1,192,924.00 for goods, wares, merchandise, and/or services, which were provided and delivered to Defendant at its request.  No part of the above sum has been paid and the sum of the $1,192,924.00 is now due and owing from Defendants to Plaintiff, together with interest thereon at the legal rate from after November 21, 2022, plus reasonable attorneys' fees and costs as allowed by law.

//

//

COMPLAINT

## FOURTH CAUSE OF ACTION

### OPEN BOOK ACCOUNT

**(Against Defendants Hydroman, Nature's Miracle and DOES 1-50)**

29.     Plaintiff refers to paragraphs 1 through 16 of this Complaint and incorporates those paragraphs by reference as though fully set forth in this section.

30.     Plaintiff alleges that within the past four (4) years, Defendants Hydroman, Nature's Miracle and Does 1-50 became indebted to Plaintiff on an open book account for a balance due in the sum of $5,664.242.56 for goods, wares, merchandise, and/or services, which were provided and delivered to Defendant at its request.  No part of the above sum has been paid and the sum of the $5,664.242.56 is now due and owing from Defendants to Plaintiff, together with interest thereon at the legal rate from after November 1, 2022, plus reasonable attorneys' fees and costs as allowed by law.

## FIFTH CAUSE OF ACTION

### ACCOUNT STATED

**(Against Defendants Visiontech, Nature's Miracle and DOES 1-50)**

31.     Plaintiff refers to paragraphs 1 through 16 of this Complaint and incorporates those paragraphs by reference as though fully set forth in this section.

32.     Plaintiff alleges that on or about November 2022, there was an account stated between Plaintiff and Defendants, in which the sum of $1,192,924.00 was agreed upon as the balance due to Plaintiff.  No part of said sum has been paid, and the sum of $1,192,924.00 is now due and owing from said Defendants to Plaintiff, together with interest thereon at the legal rate from and after November 21, 2022, plus reasonable attorneys' fees and costs as allowed by law.

//

//

COMPLAINT

## SIXTH CAUSE OF ACTION

### ACCOUNT STATED

### (Against Defendants Hydroman, Nature's Miracle and DOES 1-50)

33.     Plaintiff refers to paragraphs 1 through 16 of this Complaint and incorporates those paragraphs by reference as though fully set forth in this section.

34.     Plaintiff alleges that on or about November 2022, there was an account stated between Plaintiff and Defendants, in which the sum of $5,664.242.56 was agreed upon as the balance due to Plaintiff.  No part of said sum has been paid, and the sum of $5,664.242.56 is now due and owing from said Defendants to Plaintiff, together with interest thereon at the legal rate from and after November 1, 2022, plus reasonable attorneys' fees and costs as allowed by law.

## SEVENTH CAUSE OF ACTION

### FRAUD

### (Against All Defendants)

35.     Plaintiff refers to paragraphs 1 through 16 of this Complaint and incorporates those paragraphs by reference as though fully set forth in this section.

36.     In or about Fall of 2022, Defendants, and each of them, engaged in a course of conduct, representations, and business pretenses whereby Defendants, and each of them, falsely and fraudulently represented to Plaintiff:

      a.   That they did business as reputable businesspeople and had adequate assets and resources with which to make their obligated payments; and

      b.   That they would make those payments promptly.

37.     The representations made by Defendants were in fact false.  The true facts were that Defendants, and each of them, were not reputable businesspersons and had no intention of honoring their payment obligations to Plaintiff.

38.     When Defendants, and each of them, made the representations, they knew them to be false, and Defendants, and each of them, made these representations with the intent to

COMPLAINT

deceive and defraud Plaintiff and induce Plaintiff to act in the manner herein alleged, including entering into the Guaranty Agreement.

39.     Plaintiff, at the time these representations were made by Defendants, and each of them, and at the time Plaintiff took the actions alleged, was ignorant of their falsity and believed them to be true. In reliance on these representations, Plaintiff was induced to and did act as indicated herein. Had Plaintiff known the actual facts, it would not have entered into the Guaranty Agreement. Plaintiff's reliance on these representations was justified because the contract was entered into under ordinary circumstances and Plaintiff attempted to ascertain the true intent of Defendants prior to entering into it.

40.     As a proximate result of the fraud and deceit of Defendants, and each of them, as herein alleged, Plaintiff was induced to engage in business with Defendants, and each of them, and extend credit as stated above, by reason of which it has been damaged in an amount to be proven at trial but above the jurisdictional minimum of this Court together with interest at the proper legal rate from November 1, 2022.

41.     Plaintiff is informed and believes and thereon alleges that these Defendants, and each of them, acted with oppression, fraud, malice and in conscious disregard of the rights of Plaintiff.  Plaintiff prays this court award punitive damages by way of example against these Defendants to be determined by the Court at time of trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.     For general damages, according to proof, on each cause of action for which such damages are available;

2.     For compensatory damages, according to proof, on each cause of action for which such damages are available;

3.     For exemplary damages, according to proof, on each cause of action for which such damages are available;

COMPLAINT

4.      For attorneys' fees and costs of suit herein;

5.      For pre-judgment interest at the maximum legal rate; and

6.      For such other and further relief as may be just and proper.


DATED: June 5, 2024                         Respectfully submitted,

                                            ADY LAW GROUP, P.C.

                                            By:_____

                                                    A. David Youssefyeh


DATED: June 5, 2024                         Respectfully submitted,

                                            CUCHER LAW, P.C.


                                            By:___*Rob D. Cucher*_____

                                                    Rob D. Cucher


                                            Attorneys for Plaintiff,
                                            MEGAPHOTON, INC.

COMPLAINT

## JURY DEMAND

Plaintiff hereby demands a jury on the claims for relief to which a jury is allowed.

DATED: June 5, 2024

Respectfully submitted,

ADY LAW GROUP, P.C.

By:_____

A. David Youssefyeh

DATED: June 5, 2024

Respectfully submitted,

CUCHER LAW, P.C.

By:___*Rob D. Cucher*_____

Rob D. Cucher

Attorneys for Plaintiff,
MEGAPHOTON, INC.

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit A**

COMPLAINT

## GUARANTY AGREEMENT

This GURANTY AGREEMENT ("Agreement") is made and entered into as of this
21st____ day of November, 2022, by and between NATURE'S MIRACLE, INC., a Delaware
corporation, with its principal place of business at 1013 Centre Rd, Ste 403b, Wilmington, New
Castle, DE 19805-1270 ("**Guarantor**"), VISIONTECH GROUP INC., a California corporation,
with its principal place of business at 858 North Central Avenue, Upland, CA 91786 ("**Debtor**"),
and Megaphoton Inc., a Chinese corporation, with its principal place of business at No.15
Airport North Road, Jinwan District, Zhuhai City, Guangdong Province, China ("**Creditor**").

## RECITALS

WHEREAS, Debtor has been purchasing artificial lighting system products from Creditor
for the past few years and up until October 31, 2022, Debtor still owes Creditor a total of
~~USD ONE MILLION ONE HUNDRED AND NINETY TWO THOUAND, NINE HUNDRED AND
TWENTY FOUR~~ ($ 1,192,924.00) of unpaid payment for the goods purchasedfrom Creditor (the "Debt")
that needs to be fully paid on or before 31st day of ~~December   ,2022.~~
              January, 2023
WHEREAS, Guarantor is the only Shareholder of Debtor.

WHEREAS, Debtor and Creditor agree to settle and resolve the Debt in full by following
the debt repayment plan in **Exhibit A** upon Guarantor unconditionally guarantees payment and
performance to Creditor of the Guaranteed Obligations (as herein defined).

NOW, THEREFORE, as an inducement to Creditor to agree to the debt repayment plan
(hereinafter referred to as the "DRP") in **Exhibit A**, and for other good and valuable
consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties do
hereby agree as follows:

## AGREEMENTS

1.    Scope of Guaranty. Guarantor hereby irrevocably, absolutely and unconditionally
guarantees to Creditor and its successors and assigns the payment of the Debt and performance
of the DRP as and when the same shall be due and payable, whether by lapse of time, by
acceleration of maturity or otherwise. Guarantor hereby irrevocably and unconditionally
covenants and agrees that it is liable for the DRP as a primary obligor and not merely as a surety.

2.    Nature of Guaranty. This Agreement is an irrevocable, absolute, continuing guaranty of
payment and not a guaranty of collection. The fact that at any time or from time to time the Debt
may be increased or reduced shall not release or discharge the obligation of Guarantor to
Creditor with respect to the Debt. This Agreement may only be enforced by Creditor and shall
not be discharged by the assignment or negotiation of all or part of the DRP.

3.    Guaranteed Obligations Not Reduced by Offset. The liabilities and obligations of
Guarantor to Creditor hereunder, shall not be reduced, discharged or released because or by
reason of any existing or future offset, claim or defense of Borrower, or any other
party, against Creditor or against payment of the Debt, whether such offset, claim or defense
arises in connection with the Debt or otherwise.



4.      <u>Payment By Guarantor</u>. If all or any part of the Debt shall not be punctually paid when due, such failure of the Debtor shall be deemed a material breach of the DRP and Guarantor shall, immediately upon demand by Creditor, and without presentment, protest, notice of protest, notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the maturity, or any other notice whatsoever, pay in lawful money of the United States of America, the amount of Debt due to Creditor at Creditor's required time and location, within Five (5) business days upon Creditor's demand, made either in writing or email or another method mutually agreed by the Parties.

5.      <u>Waivers</u>. Guarantor does hereby (a) waive notice of acceptance of this Guaranty by Creditor and any and all notices and demands of every kind which may be required to be given by any statute, rule or law, (b) agree to refrain from asserting, until after repayment in full of the Debt, any defense, right of set-off or other claim which Guarantor may have against Debtor (c) waive any defense, right of set-off or other claim which Guarantor or Debtor may have against Creditor, (d) waive any and all rights Guarantor may have under any anti-deficiency statute or other similar protections, (e) waive presentment for payment, demand for payment, notice of nonpayment or dishonor, protest and notice of protest, diligence in collection and any and all formalities which otherwise might be legally required to charge Guarantor with liability, and it being understood and agreed that Creditor has no duty so to inform and that Guarantor is fully responsible for being and remaining informed by Debtor of all circumstances bearing on the risk of nonperformance of Debtor's obligations. Creditor shall have no obligation to disclose or discuss with Guarantor its assessment of the financial condition of the Debtor. Guarantor acknowledges that no representations of any kind whatsoever have been made by Creditor.

6.      <u>Payment of Expenses</u>. In the event that Guarantor should breach or fail to timely perform any provisions of this Agreement, Guarantor shall, immediately upon demand by Creditor, pay Creditor all costs and expenses (including court costs and reasonable attorneys' fees) incurred by Creditor in the enforcement hereof or the preservation of Creditor's rights hereunder (the foregoing, collectively "<u>Enforcement Costs</u>").

7.      <u>Effect of Bankruptcy</u>. In the event that Debtor files for any insolvency, bankruptcy, reorganization, receivership or other debtor relief law, or any judgment, order or decision thereunder, this Agreement shall remain in full force and effect. It is the intention of Debtor and Guarantor that Guarantor's obligations hereunder shall not be discharged except by Guarantor's performance of such obligations and then only to the extent of such performance.

8.      <u>Waiver of Subrogation, Reimbursement and Contribution</u>. Notwithstanding anything to the contrary contained in this Agreement, until such time as the Debt has been paid in full, Guarantor hereby unconditionally and irrevocably waives, releases and abrogates any and all rights it may now or hereafter have under any agreement, at law or in equity (including, without limitation, any law subrogating Guarantor to the rights of Creditor), to assert any claim against or seek contribution, indemnification or any other form of reimbursement from Debtor or any other party liable for payment of any or all of the Debt for any payment made by Guarantor under or in connection with this Agreement.



9.     Modifications. Any renewal, extension, increase, modification, alteration or
rearrangement of all or any part of the Debt, the DRP, or any other document, instrument,
contract or understanding between Debtor and Creditor pertaining to the Debt shall be agreed in
writing by Creditor.

10.     Guarantor's Representation and Warranties.

10.1.     Authority. Guarantor is a corporation organized under the laws of the State of Delaware.
Guarantor has the power, authority and legal right (A) to execute, deliver and perform its
obligations under this Agreement and (B) to engage in the transactions contemplated by this
Agreement. This Agreement has been duly authorized, executed and delivered on behalf of
Guarantor. Guarantor possesses all material rights, licenses, permits, consents and authorizations,
governmental or otherwise, necessary to entitle it to execute, deliver, perform, and comply with
this Agreement, and consummate the transactions contemplated hereby.

10.2.     Legality. To Guarantor's knowledge, the execution, delivery and performance by
Guarantor of this Agreement and the consummation of the transactions contemplated hereunder
do not and will not contravene or conflict with any law, statute or regulation whatsoever to
which Guarantor is subject or constitute a default (or an event which with notice or lapse of time
or both would constitute a default) under, or result in the breach of, any indenture, charge, lien,
or any contract, agreement or other instrument to which Guarantor is a party. This Agreement is
Guarantor's legal and binding obligation and is enforceable in accordance with its terms, except
as limited by bankruptcy, insolvency or other laws of general application relating to the
enforcement of creditors' rights.

10.3.     Litigation. There is no action, suit, proceeding or investigation pending or, to Guarantor's
knowledge, threatened against Guarantor in any court or by or before any other governmental
authority, or labor controversy affecting Guarantor or any of Guarantor's properties, businesses,
assets or revenues, which would reasonably be expected to materially and adversely affect the
performance of Guarantor's obligations and duties under this Agreement or impair Guarantor's
ability to fully fulfill and perform Guarantor's obligations under this Agreement.

10.4.     Survival. All representations and warranties made by Guarantor herein shall survive the
execution hereof.

11.     MISCELLANEOUS

11.1.     Notices. All notices, consents, approvals and requests required or permitted hereunder
shall be given in writing and shall be effective for all purposes if (i) hand delivered, (ii) sent by
certified or registered United States mail, postage prepaid, return receipt requested, (iii) sent by
expedited prepaid delivery service, either commercial or United States Postal Service, with proof
of attempted delivery, or (iv) sent by e-mail, in each case addressed as follows:

If to Creditor:          Megaphoton Inc.
                         Attention:
                         E-mail: _____djl@mphoton.com_____

If to Guarantor:         NATURE'S MIRACLE, INC.

1013 Centre Rd, Ste 403b,
Wilmington, New Castle, DE 19805-1270
Attention:
E-mail: _____

    A notice shall be deemed to have been given, (i) in the case of hand delivery, at the time of delivery, (ii) in the case of registered or certified mail, when delivered or the first attempted delivery on a Business Day, (iii) in the case of expedited prepaid delivery, upon the first attempted delivery on a Business Day, or (iv) in the case of e-mail, upon sender's receipt of an automatically generated confirmation of successful transmission.

11.2.  Governing Law; Submission to Jurisdiction. This agreement shall be deemed to be a contract made under and governed by the laws of the State of California. Any legal suit, action or proceeding against creditor or guarantor arising out of or relating to this agreement may, at Creditor's option, be instituted in any federal or state court in the City of Los Angeles, County of Los Angeles, and Guarantor waives any objections which it may now or hereafter have based on venue and/or forum non conveniens of any such suit, action or proceeding, and Guarantor and hereby irrevocably submits to the jurisdiction of any such court in any suit, action or proceeding.

11.3.  Invalid Provisions. If any provision of this Agreement is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Agreement, such provision shall be fully severable and this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement, and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Agreement, unless such continued effectiveness of this Agreement, as modified, would be contrary to the basic understandings and intentions of the parties as expressed herein.

11.4.  Amendments. This Agreement may be amended only by an instrument in writing executed by the party or an authorized representative of the party against whom such amendment is sought to be enforced.

11.5.  No Assignment. Guarantor may not, without the prior written consent of Creditor, assign any of its rights, powers, duties or obligations hereunder.

11.6.  Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, assigns and legal representatives.

11.7.  Headings. Section headings are for convenience of reference only and shall in no way affect the interpretation of this Agreement.

11.8.  Recitals. The recital and introductory paragraphs hereof are a part hereof, form a basis for this Agreement and shall be considered prima facie evidence of the facts and documents referred to therein.

11.9.  Entirety. This Agreement embodies the final and entire agreement of Guarantor and Creditor with respect to Guarantor's guaranty of Debts and supersedes any and all prior



commitments, agreements, representations, and understandings, whether written or oral, relating to the subject matter hereof. This Agreement is intended by Guarantor and Creditor as a final and complete expression of the terms of the guaranty, and no course of dealing between Guarantor and Creditor, no course of performance, no trade practices, and no evidence of prior, contemporaneous or subsequent oral agreements or discussions or other extrinsic evidence of any nature shall be used to contradict, vary, supplement or modify any term of this Agreement. There are no oral agreements between Guarantor and Creditor.

IN WITNESS WHEREOF, THE PARTIES have caused this Agreement to be duly executed and delivered as of the date first above written.

GUARANTOR:

NATURE'S MIRACLE INC.,
a Delaware corporation

By: _____
Name: _____CEO  Tie Li___
Title:

DEBTOR:

VISIONTECH GROUP INC.,
a California corporation

By: _____
Name: ZHIYI ZHANG
Title: C.B.O

CREDITOR:

Megaphoton Inc.
a Chinese corporation

By: _____
Name: Jinlong Du
Title: Principal

**Exhibit A**

The followings are the debt repayment plan from VISIONTECH GROUP INC. to
MEGAPHOTON INC. The debt amount is collected on the date of October 31st. , 2022.

1. The debts of VISIONTECH GROUP INC and the confirmed repayment plan are as follows:

1.1 Total debt amount: USD 1,192,924.00

1) 4284PCS LED ML-TYT72,000 shipped from the original factory of MEGAPHOTON INC.:
USD 1,192,924.00 (due on September 29, 2022)

2) Repayment contract No.:
MP2204010-P2204063: USD 151,470.00
MP2205001-P2205056: USD 321,940.00
MP2205007-P2205057: USD 302,940.00
MP2206001-P2203243: USD 128,304.00
MP2206002-P2206018: USD 151,470.00
MP2206020-P2206221: USD 136,800.00
Total: USD 1,192,924.00

1.2. Repayment schedule:
1) By the end of November 2022: USD 400,000.00
2) By the end of December 2022: USD 392,924.00
3) By the end of Jan 2023: USD 400,000.00

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>Exhibit B</u>**

COMPLAINT

## GUARANTY AGREEMENT

This GURANTY AGREEMENT ("Agreement") is made and entered into as of this
 22nd     day of November, 2022, by and between NATURE'S MIRACLE, INC., a Delaware
corporation, with its principal place of business at 1013 Centre Rd, Ste 403b, Wilmington, New
Castle, DE 19805-1270 ("**Guarantor**"), HYDROMAN INC., a California corporation with its
principal place of business at 4276 KATELLA AVE, 90720 ("**Debtor**"),and Megaphoton Inc., a
Chinese corporation, with its principal place of business at No.15 Airport North Road, Jinwan
District, Zhuhai City, Guangdong Province, China ("**Creditor**").

## RECITALS

WHEREAS, Debtor has been purchasing artificial lighting system products from Creditor
for the past few years and up until October 31, 2022, Debtor still owes Creditor a total of
USD FIVE MILLION, SIX HUNDRED AND SIXTY-FOUR THOUSAND, TWO HUNDRED
FORTY-TWO, CENT FIFTY-SIX. (Exhibit A:USD 5,664,242.56 of unpaid payment for the goods
purchasedfrom Creditor (the "Debt") that needs to be fully paid on or before 30th day of April,2023.

WHEREAS, Guarantor is the only Shareholder of Debtor.

WHEREAS, Debtor and Creditor agree to settle and resolve the Debt in full by following
the debt repayment plan in **Exhibit A** upon Guarantor unconditionally guarantees payment and
performance to Creditor of the Guaranteed Obligations (as herein defined).

NOW, THEREFORE, as an inducement to Creditor to agree to the debt repayment plan
(hereinafter referred to as the "DRP") in **Exhibit A** and for other good and valuable
consideration, the receipt and legal sufficiency of which are hereby acknowledged, the parties do
hereby agree as follows:

## AGREEMENTS

1.      Scope of Guaranty. Guarantor hereby irrevocably, absolutely and unconditionally
guarantees to Creditor and its successors and assigns the payment of the Debt and performance
of the DRP as and when the same shall be due and payable, whether by lapse of time, by
acceleration of maturity or otherwise. Guarantor hereby irrevocably and unconditionally
covenants and agrees that it is liable for the DRP as a primary obligor and not merely as a surety.

2.      Nature of Guaranty. This Agreement is an irrevocable, absolute, continuing guaranty of
payment and not a guaranty of collection. The fact that at any time or from time to time the Debt
may be increased or reduced shall not release or discharge the obligation of Guarantor to
Creditor with respect to the Debt. This Agreement may only be enforced by Creditor and shall
not be discharged by the assignment or negotiation of all or part of the DRP.

3.      Guaranteed Obligations Not Reduced by Offset. The liabilities and obligations of
Guarantor to Creditor hereunder, shall not be reduced, discharged or released because or by
reason of any existing or future offset, claim or defense of Borrower, or any other
party, against Creditor or against payment of the Debt, whether such offset, claim or defense
arises in connection with the Debt or otherwise.

4.    <u>Payment By Guarantor</u>. If all or any part of the Debt shall not be punctually paid when
due, such failure of the Debtor shall be deemed a material breach of the DRP and Guarantor
shall, immediately upon demand by Creditor, and without presentment, protest, notice of protest,
notice of non-payment, notice of intention to accelerate the maturity, notice of acceleration of the
maturity, or any other notice whatsoever, pay in lawful money of the United States of America,
the amount of Debt due to Creditor at Creditor's required time and location, within Five (5)
business days upon Creditor's demand, made either in writing or email or another method
mutually agreed by the Parties.

5.    <u>Waivers</u>. Guarantor does hereby (a) waive notice of acceptance of this Guaranty by
Creditor and any and all notices and demands of every kind which may be required to be given
by any statute, rule or law, (b) agree to refrain from asserting, until after repayment in full of the
Debt, any defense, right of set-off or other claim which Guarantor may have against Debtor
(c) waive any defense, right of set-off or other claim which Guarantor or Debtor may have
against Creditor, (d) waive any and all rights Guarantor may have under any anti-deficiency
statute or other similar protections, (e) waive presentment for payment, demand for payment,
notice of nonpayment or dishonor, protest and notice of protest, diligence in collection and any
and all formalities which otherwise might be legally required to charge Guarantor with liability,
and it being understood and agreed that Creditor has no duty so to inform and that Guarantor is
fully responsible for being and remaining informed by Debtor of all circumstances bearing on the
risk of nonperformance of Debtor's obligations. Creditor shall have no obligation to disclose or
discuss with Guarantor its assessment of the financial condition of the Debtor. Guarantor
acknowledges that no representations of any kind whatsoever have been made by Creditor.

6.    <u>Payment of Expenses</u>. In the event that Guarantor should breach or fail to timely perform
any provisions of this Agreement, Guarantor shall, immediately upon demand by Creditor, pay
Creditor all costs and expenses (including court costs and reasonable attorneys' fees) incurred by
Creditor in the enforcement hereof or the preservation of Creditor's rights hereunder (the
foregoing, collectively "<u>Enforcement Costs</u>").

7.    <u>Effect of Bankruptcy</u>. In the event that Debtor files for any insolvency, bankruptcy,
reorganization, receivership or other debtor relief law, or any judgment, order or decision
thereunder, this Agreement shall remain in full force and effect. It is the intention of Debtor and
Guarantor that Guarantor's obligations hereunder shall not be discharged except by Guarantor's
performance of its obligations and then only to the extent of such performance.

8.    <u>Waiver of Subrogation, Reimbursement and Contribution</u>. Notwithstanding anything to
the contrary contained in this Agreement, until such time as the Debt has been paid in full,
Guarantor hereby unconditionally and irrevocably waives, releases and abrogates any and all
rights it may now or hereafter have under any agreement, at law or in equity (including, without
limitation, any law subrogating Guarantor to the rights of Creditor), to assert any claim against or
seek contribution, indemnification or any other form of reimbursement from Debtor or any other
party liable for payment of any or all of the Debt for any payment made by Guarantor under or in
connection with this Agreement.

9.    Modifications. Any renewal, extension, increase, modification, alteration or rearrangement of all or any part of the Debt, the DRP, or any other document, instrument, contract or understanding between Debtor and Creditor pertaining to the Debt shall be agreed in writing by Creditor.

10.    Guarantor's Representation and Warranties.

10.1.    Authority. Guarantor is a corporation organized under the laws of the State of Delaware. Guarantor has the power, authority and legal right (A) to execute, deliver and perform its obligations under this Agreement and (B) to engage in the transactions contemplated by this Agreement. This Agreement has been duly authorized, executed and delivered on behalf of Guarantor. Guarantor possesses all material rights, licenses, permits, consents and authorizations, governmental or otherwise, necessary to entitle it to execute, deliver, perform, and comply with this Agreement, and consummate the transactions contemplated hereby.

10.2.    Legality. To Guarantor's knowledge, the execution, delivery and performance by Guarantor of this Agreement and the consummation of the transactions contemplated hereunder do not and will not contravene or conflict with any law, statute or regulation whatsoever to which Guarantor is subject or constitute a default (or an event which with notice or lapse of time or both would constitute a default) under, or result in the breach of, any indenture, charge, lien, or any contract, agreement or other instrument to which Guarantor is a party. This Agreement is Guarantor's legal and binding obligation and is enforceable in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to the enforcement of creditors' rights.

10.3.    Litigation. There is no action, suit, proceeding or investigation pending or, to Guarantor's knowledge, threatened against Guarantor in any court or by or before any other governmental authority, or labor controversy affecting Guarantor or any of Guarantor's properties, businesses, assets or revenues, which would reasonably be expected to materially and adversely affect the performance of Guarantor's obligations and duties under this Agreement or impair Guarantor's ability to fully fulfill and perform Guarantor's obligations under this Agreement.

10.4.    Survival. All representations and warranties made by Guarantor herein shall survive the execution hereof.

11.    MISCELLANEOUS

11.1.    Notices. All notices, consents, approvals and requests required or permitted hereunder shall be given in writing and shall be effective for all purposes if (i) hand delivered, (ii) sent by certified or registered United States mail, postage prepaid, return receipt requested, (iii) sent by expedited prepaid delivery service, either commercial or United States Postal Service, with proof of attempted delivery, or (iv) sent by e-mail, in each case addressed as follows:

If to Creditor:          Megaphoton Inc.
                         Attention:
                         E-mail:  _djl@mphoton.com_

If to Guarantor:         NATURE'S MIRACLE, INC.

1013 Centre Rd, Ste 403b,
Wilmington, New Castle, DE 19805-1270
Attention:
E-mail: ~~James. Li @ Nature - Miracle. com~~

    A notice shall be deemed to have been given, (i) in the case of hand delivery, at the time of delivery, (ii) in the case of registered or certified mail, when delivered or the first attempted delivery on a Business Day, (iii) in the case of expedited prepaid delivery, upon the first attempted delivery on a Business Day, or (iv) in the case of e-mail, upon sender's receipt of an automatically generated confirmation of successful transmission.

11.2.  <u>Governing Law; Submission to Jurisdiction</u>. This agreement shall be deemed to be a contract made under and governed by the laws of the State of California. Any legal suit, action or proceeding against creditor or guarantor arising out of or relating to this agreement may, at Creditor's option, be instituted in any federal or state court in the City of Los Angeles, County of Los Angeles, and Guarantor waives any objections which it may now or hereafter have based on venue and/or forum non conveniens of any such suit, action or proceeding, and Guarantor and hereby irrevocably submits to the jurisdiction of any such court in any suit, action or proceeding.

11.3.  <u>Invalid Provisions</u>. If any provision of this Agreement is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Agreement, such provision shall be fully severable and this Agreement shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Agreement, and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Agreement, unless such continued effectiveness of this Agreement, as modified, would be contrary to the basic understandings and intentions of the parties as expressed herein.

11.4.  <u>Amendments</u>. This Agreement may be amended only by an instrument in writing executed by the party or an authorized representative of the party against whom such amendment is sought to be enforced.

11.5.  <u>No Assignment</u>. Guarantor may not, without the prior written consent of Creditor, assign any of its rights, powers, duties or obligations hereunder.

11.6.  <u>Successors and Assigns</u>. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, assigns and legal representatives.

11.7.  <u>Headings</u>. Section headings are for convenience of reference only and shall in no way affect the interpretation of this Agreement.

11.8.  <u>Recitals</u>. The recital and introductory paragraphs hereof are a part hereof, form a basis for this Agreement and shall be considered prima facie evidence of the facts and documents referred to therein.

11.9.  <u>Entirety</u>. This Agreement embodies the final and entire agreement of Guarantor and Creditor with respect to Guarantor's guaranty of Debts and supersedes any and all prior

commitments, agreements, representations, and understandings, whether written or oral, relating to the subject matter hereof. This Agreement is intended by Guarantor and Creditor as a final and complete expression of the terms of the guaranty, and no course of dealing between Guarantor and Creditor, no course of performance, no trade practices, and no evidence of prior, contemporaneous or subsequent oral agreements or discussions or other extrinsic evidence of any nature shall be used to contradict, vary, supplement or modify any term of this Agreement. There are no oral agreements between Guarantor and Creditor.


IN WITNESS WHEREOF, THE PARTIES have caused this Agreement to be duly executed and delivered as of the date first above written.

GUARANTOR:

NATURE'S MIRACLE INC.,
a Delaware corporation

By:
Name:
Title:        Tie Li
              CEO

DEBTOR:

HYDROMAN INC.,

a California corporation

By:
Name: John Warm
Title:  President

CREDITOR:

Megaphoton Inc.
a Chinese corporation

By:
Name: Jinlong Du
Title:  Principal

**Exhibit A**

The followings are the debt repayment plan from HYDROMAN INC. to MEGAPHOTON INC. (Included shipped under CHINA ELECTRONICS ZHUHAI CO LTD). The debt amount is collected on the date of October 31st. , 2022.

HYDROMAN INC. confirmed to pay Megaphoton Inc. which total amount is 5,664,242.56 US dollars, the repayment plan as follows:

1. At the end of November 2022, the payment will be 200,000.00 US dollars, refer as MP2103014;
2. At the end of November, 2022. HYDROMAN INC. needs to pay MEGAPHOTON INC. USD1,044,355.00 refer as MP2210005
3. Before December 15th,2022. HYDROMAN INC. needs to pay MEGAPHOTON INC. The total contract amount of 844,261.18 US dollars, refer as MP2104054/MP2105018/MP2105040/MP2107033/MP2202013/MP2202020;
4. In mid-December 2022, the payment will be 300,000.00 US dollars, refer as MP2103014;
5. At the end of December, 2022. HYDROMAN INC. needs to pay MEGAPHOTON INC. in total $593,545.20 US dollars, refer as MP2206013&14/MP2209001;
6. USD 400,000 will be paid by the end of January 2023, refer as MP2103014;
7. At the end of February 2023, the payment will be 700,000.00 US dollars, refer as MP2103014/MP2103015;
8. At the end of March 2023, the payment will be 900,000.00 US dollars, refer as MP2103015/20Z030C1C009-1/20Z030C1C009-2/20Z030C1C009-3/20Z030C1C007/20Z030C1C006;
9. At the end of April 2023, the payment will be 682,081.18 US dollars, refer as 20Z030C1C006.

As for the debts which signed contract with CHINA ELECTRONICS ZHUHAI CO LTD., HYROMAN INC. needs to pay to MEGAPHOTON INC. or CHINA ELECTRONICS ZHUHAI CO LTD. according to the requirements of MEGAPHOTON INC.. Specific payment details shall be coordinated by MEGAPHOTON INC. before the payment involving CHINA ELECTRONICS ZHUHAI CO LTD. happened. Whether the payment is to CHINA ELECTRONICS ZHUHAI CO LTD. or to MEGAPHOTON INC., it is within the overall payment collection plan of MEGAPHOTON INC.