A. David Youssefyeh (185994)
    david@adylaw.com
ADY LAW GROUP, P.C.
1925 Century Park East, Suite 220
Los Angeles, California  90067
Tel:    (310) 772-2872

Rob D. Cucher (219726)
    cucherlaw@msn.com
CUCHER LAW, P.C.
9454 Wilshire Blvd Ste 600
Beverly Hills, CA 90212
Tel:    (310) 795-5356

Attorneys for Plaintiff,
MEGAPHOTON, INC.

Brian M. Davis (241984)
    bdavis@ForwardCounsel.com
Andrew R. Nelson (214895)
    anelson@forwardcounsel.com
FORWARD COUNSEL, LLP
4340 Von Karman Avenue, Suite 380
Newport Beach, California 92660
Telephone: (949) 258-9359

Attorneys for Defendants,
VISIONTECH GROUP, INC.
HYDROMAN, INC. and  NATURE'S MIRACLE, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEGAPHOTON, INC., a Chinese corporation<br><br>                Plaintiff,<br><br>        vs.<br><br>VISIONTECH GROUP, INC., a California Corporation; HYDROMAN, INC., a California Corporation; NATURE'S MIRACLE, INC., a Delaware Corporation; and DOES 1 through 50, inclusive | Case No.  5:24-cv-01181-AH-(DTBx)<br><br>Assigned: Hon. Anne Hwang<br><br>**PLAINTIFF AND DEFENDANTS' JOINT POINTS AND AUTHORITIES IN SUPPORT OF AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON ITS FIRST, SECOND, FIFTH AND SIXTH CAUSES OF ACTION** |

– 1 –

Defendants.

**<u>Hearing</u>**
**Date:** August 13, 2025
**Time:** 1:30 pm
**Location:** Courtroom 7D

Plaintiff and Defendants hereby submit this joint Memorandum of Points and Authorities in Support of, and in Opposition to, Plaintiff's Motion for Summary Adjudication of its First, Second, Fifth and Sixth Causes of Action.

Dated:  July 9, 2025                               ADY LAW GROUP, PC

                                                  By:   *A. David Youssefyeh*
                                                  A. David Youssefyeh

                                                  Attorneys for Plaintiff,
                                                  MEGAPHOTON, INC.

Dated: July 9, 2025                               CUCHER LAW, P.C.

                                                  By:   *Rob D. Cucher*
                                                  Rob D. Cucher

                                                  Attorneys for Plaintiff,
                                                  MEGAPHOTON, INC.

Dated: July 9, 2025                               FORWARD COUNSEL, LLC

                                                  By:   *Brian M. Davis*
                                                  Brian M. Davis

                                                  Attorneys for Defendants,
                                                  VISIONTECH GROUP, INC.
                                                  HYDROMAN, INC. and
                                                  NATURE'S MIRACLE, INC.

– 2 –

# **TABLE OF CONTENTS**

I.  Plaintiff'S Introduction .................................................................8

II.   Defendants' Introduction ...........................................................8

III.   Plaintiff's Undisputed Facts .....................................................9

IV.   Defendants' Undisputed Facts...................................................12

V.   Plaintiff's Legal Authority.........................................................14

  A.   Summary Judgment Is Warranted When No Disputes Exist As To Material Facts And The Movement Is Entitled As A Matter Of Law ......................................14

  B.   The Court Should Grant Summary Adjudication On The First Cause Of Action For Breach of Contract Against Defendants Nature's Miracle And Visiontech .......14

    1.   The Elements Of A Cause Of Action For Breach Of Contract .....................14

    2.   All Of The Elements Of A Cause Of Action For Breach Of Contract Are Met 15

C.    The Court Should Grant Summary Adjudication On The Second Cause Of Action For Breach of Contract Against Defendants Nature's Miracle And Hydroman 15

1.    The Elements Of A Claim For Breach Of Contract.......................................16

2.    All Of The Elements Of A Claim For Breach Of Contract Are Met..............16

D.    The Court Should Grant Summary Adjudication On The Fifth Cause Of Action For Account Stated Against Defendants Nature's Miracle And Visiontech .............16

1.    The Elements Of A Claim For Account Stated................................................16

2.    All Of The Elements Of A Claim For Breach Of Account Stated Are Met ...17

E.    The Court Should Grant Summary Adjudication On The Sixth Cause Of Action For Account Stated Against Defendants Nature's Miracle And Hydroman..............18

1.    The Elements Of A Claim For Account Stated................................................18

2.    All Of The Elements Of A Claim For Breach Of Account Stated Are Met ...18

VI.    Defendants' Legal Authority ...................................................................................19

A.    Rule 56 Requires Denial of Summary Judgment (or Partial Summary Adjudication) Where Genuine Disputes Exist. .........................................................19

PLAINTIFF AND DEFENDANTS' JOINT BRIEF

B.    The Visiontech "Guarantee" Never Bound Nature's Miracle or Megaphoton ..19

C.    The Hydroman Document Is Even Less Enforceable—Revoked Guaranty and a
Mystery Signature Create Triable Issues ...................................................................20

D.    No Valid Contract Means No "Account Stated"...............................................21

E.    Performance of the Guarantees Would Violate U.S. Sanctions Against Russia
and Therefore Renders the Contracts Void................................................................23

PLAINTIFF AND DEFENDANTS' JOINT BRIEF

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242 (1986).................................................18

*Banner Entm't, Inc. v. Sup. Ct. (Alchemy Filmworks, Inc.)* 62 Cal.App.4th 348 (1998)
..............................................................................................................................19

*Celotex Corp. v. Catrett* 477 U.S. 317 (1986) ...........................................................18

*Coles v. Glaser* 2 Cal.App.5th 384 (2016) ..........................................................14, 15

*Gardner v. Watson* 170 Cal. 570 (1915)....................................................................16

*Hamilton v. Greenwich Investors XXVI, LLC* 195 Cal.App.4th 1602 (2011)........14, 15

*Hansen v. Fresno Jersey Farm Dairy Co*. 220 Cal. 402 (1934)............................16, 17

*In re WorldCom, Inc. Sec. Litig.* 352 F.Supp.2d 472 (S.D.N.Y. 2005).......................21

*Jackson v. Rogers & Wells* 210 Cal. App. 3d 336 (1989) ...........................................22

*Leighton v. Forster* 8 Cal. App. 5th 467 (2017) .........................................................21

*Maggio, Inc. v. Neal* 196 Cal.App.3d 745 (1987) .................................................16, 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ..................18

*Professional Collection Consultants v. Lauron* 8 Cal.App.5th 958 (2017) .....16, 20, 21

*Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87 (1995) ...............................................21

*Smissaert v. Chiodo*, 163 Cal.App.2d 827 (1958) ......................................................19

*United States v. Arthur Young & Co.*, 465 U.S. 805 (1984)........................................22

*Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc*. 860 F. Supp. 1448 (C.D. Cal. 1993).13

*Zinn v. Fred R. Bright Co.* 271 Cal. App. 2d 597 (1969) ............................................21

**Statutes**

Civ. Code § 1586 .......................................................................................................19

Civ. Code § 1598 ..................................................................................................22, 23

Civ. Code § 1608 ..................................................................................................22, 23

Civ. Code § 1667 ..................................................................................................22, 23

Federal Rule of Civil Procedure 56(a)........................................................................13

– 6 –

**Other Authorities**

CACI 302 ...................................................................................................................22

CACI 308 ...................................................................................................................19

**Rules**

Federal Rule of Evidence 801(d)(2) ........................................................................21

PLAINTIFF AND DEFENDANTS' JOINT BRIEF

## I.    <u>PLAINTIFF'S INTRODUCTION</u>

This is a very simple case, Defendants signed contracts agreeing to pay Plaintiff for products they purchased from Plaintiff but despite having ample time to pay, Defendants refuse to abide by their obligations.

## II.    <u>DEFENDANTS' INTRODUCTION</u>

Megaphoton's motion rests on two unsigned, half-baked guaranties—and each collapses under its own weight. Nature's Miracle revoked its signature on both drafts before Megaphoton ever countersigned, terminating any offer under Civil Code section 1586 and leaving the pages nothing more than unenforceable proposals. Hydroman never agreed at all: the name "John Warms" on its signature line belongs to no employee, officer, or agent of the company. Even setting those formation failures aside, the guaranties could not be enforced in any event; performing them would require U.S. defendants to finance Megaphoton's continuing business in Russia—transactions Executive Order 14071 squarely forbids. A later SEC disclosure listing the balance does not cure these defects: GAAP demands conservative disclosure of disputed payables, but unilateral bookkeeping is neither an admission nor the mutual assent an account-stated theory requires. With no contract, no assent, and an illegal object, Megaphoton's claims fail as a matter of law.

//

PLAINTIFF AND DEFENDANTS' JOINT BRIEF

### III.    PLAINTIFF'S UNDISPUTED FACTS

Plaintiff Megaphoton, Inc. is a manufacturer of lighting for indoor farming. (Joint Appendix of Facts ("JAF") No. 1) Defendants Visiontech Group, Inc. ("Visiontech") and Hydroman, Inc. ("Hydroman"), are former customers of Plaintiff. (JAF No. 2) During the years 2020, 2021 and 2022, Plaintiff's sales to Defendants Visiontech and Hydroman totaled approximately thirty million dollars. (JAF No. 3) During those years, Megaphoton supplied over 50% of the product sold by Defendants Visiontech and Hydroman to their customers. (JAF No. 4) During this period, Plaintiff Megaphoton 's relationship with both Visiontech and Hydroman was very good and the companies worked on finding ways of integrating deeper with each other. (JAF No. 5)

As of Fall 2022, Defendant Visiontech owed Plaintiff $1,192,924 for indoor lighting equipment that it had purchased from Plaintiff while Defendant Hydroman owed Plaintiff $5,877,608.66 for indoor lighting equipment that it had purchased from Plaintiff. (JAF No. 6) Both entities, however, were having cash flow problems and were unable to pay off the balance that they owed Plaintiff. (JAF No. 7) At the same time, Defendant Nature's Miracle's plan of merging with Defendants Visiontech and Hydroman into a "public shell," in order to go public was in full swing. (JAF No. 8) Being that the filing of a lawsuit by Plaintiff would negatively affect its plans to go public, Mr. Tie "James" Li, the CEO of Defendant Nature's Miracle approached Jinlong Du, the CEO of Plaintiff Megaphoton and proposed to enter into two separate

agreements with Plaintiff wherein in return for Megaphoton holding off on its collection efforts, and a new payment plan to pay the debt over time, Defendant Nature's Miracle would agree to be jointly liable for the debts of each company. (JAF Nos. 9 & 10) Therefore, in November of 2022, Plaintiff and Defendants Nature's Miracle and Visiontech entered into a written agreement whereby Plaintiff agreed to accept a new payment plan on the debt owed to it by Defendant Visiontech and Defendant Nature's Miracle agreed to guarantee Visiontech's debt to Plaintiff. (JAF No. 11) A copy of the Guaranty Agreement between Plaintiff and Defendants Visiontech and Nature's Miracle is attached to the Joint Appendix of Evidence ("JAE") as Exhibit 1 and incorporated herein by this reference ("Visiontech Guarantee Agreement"). Also in November of 2022, Plaintiff and Defendants Nature's Miracle and Hydroman entered into a written agreement whereby Plaintiff agreed to accept a new payment plan on the debt owed to it by Defendant Hydroman and Defendant Nature's Miracle agreed to guarantee Hydroman's debt to Plaintiff.   (JAF No. 12) A copy of the Guaranty Agreement between Plaintiff and Defendants Hydroman and Nature's Miracle is attached to the JAE as Exhibit 2 and incorporated herein by this reference ("Hydroman Guarantee Agreement").

After the execution of the guarantee agreements, the parties continued to have a very good working relationship. In fact, in a filing with the SEC on December 28, 2022, Nature's Miracle Holding, Inc., the parent company of Defendants Nature's Miracle,

Visiontech and Hydroman noted, "[w]e will likely however, continue to rely on Megaphoton to supply to us the grow light products we sell as we have a long working relationship with Megaphoton as a manufacturer and our customers have had excellent experiences with their products." (JAF No. 13).    The    same    statement    praising Megaphoton was noted by Nature's Miracle Holding, Inc. in a document filed with the SEC on January 20, 2023. (JAF No. 14)

Besides the guarantees spelling out the debt owed to Plaintiff, the liability of Defendants to Plaintiff was also confirmed in filings made with the SEC by Defendant Nature's Miracle's parent, Nature's Miracle Holding, Inc. (JAF Nos. 15-18) For example, on October 12, 2023, <u>eleven months after the execution of the guarantees</u>, Nature's Miracle Holding, Inc., in a filing with the SEC, stated in no uncertain terms that its <u>audited financial statements</u> showed:

"As of December 31, 2022 … the outstanding accounts payable amount due to Megaphoton Inc. [from Nature's Miracle] was $1,151,534… As of December 31, 2022, the outstanding account payable amount due to Megaphoton Inc. [from Hydroman] was $5,218,444." (JAF No. 15)

These amounts were later confirmed in Nature's Miracle Holding, Inc.'s audited financial disclosures in subsequent filings with the SEC on: 1) November 21, 2023 (JAF No. 16); 2) December 13, 2023 (JAF No. 17); 3) January 18, 2024 (JAF No. 18); 4) January 25, 2024 (JAF No. 19); and 5) February 1, 2024 (JAF

No. 20). In addition, the same five filings with the SEC noted above show the balance due Plaintiff Megaphoton, as of September 30, 2023, by Defendants Visiontech and Hydroman as: $1,600,406 and $5,216,444. (JAF Nos. 16 to 21) Finally, in an Annual Report filing with the SEC (Form 10-K) prior to the filing of this lawsuit, the parent company of Defendants herein, Nature's Miracle Holding, Inc. listed a liability, as of December 31, 2022, of $5,218,444 by Hydroman and $1,151,534 by Visiontech to Plaintiff. (JAF No. 18)

Subsequent to the execution of the Visiontech Guarantee Agreement, Visiontech purchased more product from Megaphoton and made three payments towards the balance due so that the remaining balance due is $1,003,661.88. (JAF No. 20)

As for Hydroman, after execution of the Guarantee Agreement, Hydroman made payments totaling $202,000.00 and is entitled to credits totaling $79,344.24 leaving a balance of $5,596,264.42. (JAF No. 21)

## IV. DEFENDANTS UNDISPUTED FACTS

1. Megaphoton, Inc. manufactures lighting products for indoor farming. (JAF 1)

2. Visiontech Group, Inc. and Hydroman, Inc. were Megaphoton customers during 2020–2022. (JAF 2)

3.      From 2020 through 2022, Megaphoton sold approximately $30 million of equipment to those companies, accounting for over 50 percent of their product sales. (JAF 3–4)

4.      In November 2022, Nature's Miracle initially signed two guaranty agreements—one for Visiontech and one for Hydroman—and subsequently rescinded or revoked its signatures before any countersignature by Megaphoton. (JAF 9–12)

5.      The Hydroman draft bears the name "John Warms" on the obligor's signature line, but no such individual has ever been employed by—or authorized to bind—Hydroman. (JAF 9–11)

6.      After Nature's Miracle's rescission, Megaphoton continued selling to its Russian affiliate, Megaphoton LLC in Moscow, including a sale dated 14 February 2023 for USD 100,448 and over 200 subsequent shipments through January 2023. (JAF 15–19)

7.      Executive Order 14071 (April 6, 2022) prohibits U.S. persons from financing, facilitating, or guaranteeing transactions with persons located in the Russian Federation, and the Treasury's May 19, 2023 determination extends that ban to engineering services. (JAF 15–19)

8.      Megaphoton circulated an internal memorandum advising customers to route payments through non-U.S. banks to "avoid U.S. sanctions." (JAF 15-19)

– 13 –

9.     Nature's Miracle Holding, Inc. (the public parent) filed SEC disclosures on December 28, 2022 and January 20, 2023 (JAF 13–14) and later filings (October 2023–February 2024) reported payables to Megaphoton solely for GAAP compliance, with liability remaining disputed. (JAF 15–18)

## V.     PLAINTIFF'S LEGAL AUTHORITY

**A.     Summary Judgment Is Warranted When No Disputes Exist As To Material Facts And The Movement Is Entitled As A Matter Of Law**

FRCP 56(a) provides in relevant part, "[a] party may move for summary judgment, identifying each claim or defense … on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Therefore, "[u]pon a showing that there is no genuine issue of material fact as to particular claims, the Court may grant summary judgment in the plaintiff's favor upon all or any part thereof." *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc*. 860 F. Supp. 1448, 1450 (C.D. Cal. 1993)

**B.     The Court Should Grant Summary Adjudication On The First Cause Of Action For Breach of Contract Against Defendants Nature's Miracle And Visiontech**

**1.     The Elements Of A Cause Of Action For Breach Of Contract**

In California, the elements of a cause of action for Breach of Contract are: "'(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff.'" *Coles v. Glaser* 2 Cal.App.5th 384, 391 (2016) quoting *Hamilton v. Greenwich Investors XXVI, LLC* 195 Cal.App.4th 1602, 1614 (2011).

### 2. All Of The Elements Of A Cause Of Action For Breach Of Contract Are Met

As noted herein above, in return for foregoing its right to sue and excepting a new payment schedule for the outstanding debt owed to Plaintiff, Plaintiff entered into the "Visiontech Guarantee Agreement" with Defendants Nature's Miracle and Visiontech. (Joint Appendix of Facts "JAF" Nos. 9-11) Moreover, Plaintiff performed its obligations under the contract which was ceasing further collection efforts on the debt. (JAF No. 19). In contrast, Defendants Nature's Miracle and Visiontech have breached the contract by refusing to make any payments pursuant to the payment plan spelled out in the contract. (JAF Nos. 20-21) Finally, Plaintiff has been damaged by Defendants' breach of the contract because it is currently owed $1,003,661.88 for product that it has sold and delivered to Defendant Visiontech. (JAF No. 20)

### C. The Court Should Grant Summary Adjudication On The Second Cause Of Action For Breach of Contract Against Defendants Nature's Miracle And Hydroman

### 1.    The Elements Of A Claim For Breach Of Contract

In California, the elements of a cause of action for Breach of Contract are: "'(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff.'" *Coles v. Glaser* 2 Cal.App.5th 384, 391 (2016) quoting *Hamilton v. Greenwich Investors XXVI, LLC* 195 Cal.App.4th 1602, 1614 (2011).

### 2.    All Of The Elements Of A Claim For Breach Of Contract Are Met

As noted herein above, in return for foregoing its right to sue and excepting a new payment schedule for the outstanding debt owed to Plaintiff, Plaintiff entered into the "Hydroman Guarantee Agreement" with Defendants Nature's Miracle and Hydroman. (Joint Appendix of Facts "JAF" Nos. 9-10, 11) Moreover, Plaintiff performed its obligations under the contract which was ceasing further collection efforts on the debt. (JAF No. 19) In contrast, Defendants Nature's Miracle and Hydroman have breached the contract by refusing to make any payments pursuant to the payment plan spelled out in the contract. (JAF Nos. 20-21) Finally, Plaintiff has been damaged by Defendants' breach of the contract because it is currently owed $5,596,264.42for product that it has sold and delivered to Defendant Hydroman. (JAF No. 21)

### D.    The Court Should Grant Summary Adjudication On The Fifth Cause Of Action For Account Stated Against Defendants Nature's Miracle And Visiontech

### 1.    The Elements Of A Claim For Account Stated

– 16 –

In California, an Account Stated is a cause of action based upon "'an agreement, based on prior transactions between the parties, that the items of an account are true and that the balance struck is due and owing.'" *Professional Collection Consultants v. Lauron* 8 Cal.App.5th 958, 968 (2017) quoting *Maggio, Inc. v. Neal* 196 Cal.App.3d 745, 752 (1987). Moreover, once the parties agree to a specific sum being due, an Account Stated "becomes a contract between the parties for payment of the amount computed to be due without proof of the specific items included therein." *Id*. quoting *Hansen v. Fresno Jersey Farm Dairy Co*. 220 Cal. 402, 407-408 (1934). Therefore, an action on an Account Stated "is not based on the parties' original transactions, but on the new contract under which the parties have agreed to the balance due." *Id*. citing *Gardner v. Watson* 170 Cal. 570, 574 (1915).

## 2. All Of The Elements Of A Claim For Breach Of Account Stated Are Met

As noted herein above, the Visiontech Guarantee Agreement clearly constitutes and agreement between the parties as to the balance due Plaintiff as of the date of the agreement. The previous transactions between the parties are irrelevant. *Id*. The only question for the Court is whether any transactions occurred between the parties after the agreement is entered into and as noted in the Declaration of Jinlong Du, Visiontech has a balance due of $1,003,661.88. JAF No. 20; Declaration of Jinlong Du "Du Declaration" ¶ 14.

– 17 –

**E.    The Court Should Grant Summary Adjudication On The Sixth Cause Of Action For Account Stated Against Defendants Nature's Miracle And Hydroman**

**1.    The Elements Of A Claim For Account Stated**

In California, an Account Stated is a cause of action based upon "'an agreement, based on prior transactions between the parties, that the items of an account are true and that the balance struck is due and owing.'" *Professional Collection Consultants v. Lauron* 8 Cal.App.5th 958, 968 (2017) quoting *Maggio, Inc. v. Neal* 196 Cal.App.3d 745 (1987) , 752. Moreover, once the parties agree to a specific sum being due, an Account Stated "becomes a contract between the parties for payment of the amount computed to be due without proof of the specific items included therein." *Id*. quoting *Hansen v. Fresno Jersey Farm Dairy Co*. 220 Cal. 402, 407-408. (1934)  Therefore, an action on an Account Stated "is not based on the parties' original transactions, but on the new contract under which the parties have agreed to the balance due." Id. citing *Gardner v. Watson* 170 Cal. 570, 574.(1915)

**2.    All Of The Elements Of A Claim For Breach Of Account Stated Are Met**

As noted herein above, the Hydroman Guarantee Agreement clearly constitutes and agreement between the parties as to the balance due Plaintiff as of the date of the agreement. The previous transactions between the parties are irrelevant. *Id*. The only question for the Court is whether any transactions occurred between the parties after the

agreement is entered into and as noted in the Declaration of Jinlong Du, after execution of the Guarantee Agreement, Hydroman made payments totaling $202,000.00 and is entitled to credits totaling $79,344.24 leaving a balance of $5,596,264.42. JAF No. 21;

## VI.    DEFENDANTS' LEGAL AUTHORITY

### A.    Rule 56 Requires Denial of Summary Judgment (or Partial Summary Adjudication) Where Genuine Disputes Exist.

Rule 56(a) provides: "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the Court must view the evidence in the light most favorable to Defendants and draw every reasonable inference in their favor. Because Megaphoton bears the ultimate burden at trial, it must present a record that would compel a single, inevitable verdict for itself; anything less requires denial of summary adjudication.

### B.    The Visiontech "Guarantee" Never Bound Nature's Miracle or Megaphoton

Megaphoton's Visiontech form carried three signature lines—Megaphoton (creditor), Visiontech (principal obligor), and Nature's Miracle (guarantor). Visiontech's CEO signed, (JAF Nos.10-12), but Nature's Miracle revoked its signature before Megaphoton ever signed and before Megaphoton furnished any present consideration (JAF Nos.10-12). California law treats missing or withdrawn signatures as fatal where execution by all parties is contemplated. See *Banner Entm't, Inc. v. Sup. Ct. (Alchemy Filmworks, Inc.)*, 62 Cal.App.4th 348, 358-59 (1998) ("when it is clear … that acceptance of the contract's terms would be signified by signing it, the failure to sign the agreement means no binding contract was created"); see also *Smissaert v. Chiodo*, 163 Cal.App.2d 827, 831 (1958) ("where … there is a manifest intention that the formal agreement is not to be complete until … executed, there is no binding contract until this is done").

Nature's Miracle's timely withdrawal terminated any offer under Civil Code § 1586 and the rule embodied in CACI 308[1]. Because Megaphoton never countersigned and its promised forbearance followed—if at all—after the revocation, a reasonable jury could conclude that the guaranty portion of the agreement never formed. Without formation, Megaphoton's first cause of action cannot be adjudicated as a matter of law.

## C.    The Hydroman Document Is Even Less Enforceable—Revoked Guaranty and a Mystery Signature Create Triable Issues

---

[1]

The Hydroman form likewise required signatures from Megaphoton, Hydroman, and Nature's Miracle. Nature's Miracle signed, then unequivocally rescinded before Megaphoton signed (JAF No. 11). The "Hydroman" block bears the name "John Warms"—an individual unknown to Hydroman or its parent. James Li, Nature's Miracle's then-CEO, will testify he first encountered that signature only when Megaphoton returned the document marked "fully executed" (Li Decl. ¶10).

These facts raise multiple triable questions: whether Hydroman ever assented, whether the purported Hydroman signature is authentic or authorized, and whether Megaphoton could accept an offer Nature's Miracle had already revoked. Under *Banner* and *Smissaert*, any one of those disputes defeats Megaphoton's request for summary adjudication on the second cause of action.

**D.    No Valid Contract Means No "Account Stated"**

An account stated arises only when the parties agree that a particular balance is correct and promise to pay it. *Professional Collection Consultants v. Lauron*, 8 Cal. App. 5th 958, 968 (2017). Nature's Miracle's rescissions—and, for Hydroman, the dubious "John Warms" signature—show there was never a mutual agreement on any balance. Whether such assent existed is a textbook jury question; without it, Megaphoton's fifth and sixth causes of action cannot be decided as a matter of law.

Further, Plaintiff points to several SEC filings by Nature's Miracle Holding, Inc. (JAF No. 16-21) to argue that Defendants have either (a) admitted Megaphoton's claim or (b) created an account stated. Neither contention withstands scrutiny.

An account stated arises only when both parties affirmatively agree that a balance is correct and promise to pay it. California authority is uniform: mutual assent is indispensable. *Professional Collection Consultants v. Lauron*, 8 Cal. App. 5th 958, 968-69 (2017); *Leighton v. Forster*, 8 Cal. App. 5th 467, 491 (2017); *Zinn v. Fred R. Bright Co.*, 271 Cal. App. 2d 597, 601 (1969). The SEC figure is a unilateral disclosure prepared for auditors. Megaphoton never saw it, accepted it, or relied on it; mutual assent is therefore absent, and the filing cannot create an account stated.

Nor does the disclosure constitute a binding admission. Under Federal Rule of Evidence 801(d)(2) a party statement is non-hearsay only when offered for its truth *and* made or adopted with that purpose. The amount here appears solely because generally accepted accounting principles require companies to disclose contingent or disputed obligations once a loss is "reasonably possible." GAAP's principle of conservatism dictates such accruals "should be in the direction of understatement rather than overstatement of net income and net assets." *In re WorldCom, Inc. Sec. Litig.*, 352 F.Supp.2d 472, 479-80 (S.D.N.Y. 2005) (quoting *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 100 (1995)). As the Supreme Court has observed, a reserve for a contingent liability merely "reflects the corporation's awareness of, and preparedness for, the

possibility of an assessment," not an acknowledgment that the liability is in fact owed. *United States v. Arthur Young & Co.*, 465 U.S. 805, 817 n.13 (1984). Thus the SEC entry memorializes accounting conservatism, **not** agreement or admission.

Because the filing is a GAAP-driven, unilateral disclosure lacking mutual assent and admission intent, it cannot be treated as an account stated or a binding evidentiary admission of liability.

## E.    Performance of the Guarantees Would Violate U.S. Sanctions Against Russia and Therefore Renders the Contracts Void

California voids any contract whose object or consideration is unlawful. Civ. Code §§ 1598, 1608, 1667. CACI 302 instructs that, when legality is disputed, the jury must also find that the contract "had a legal purpose," and "whether a contract is illegal or contrary to public policy is a question of law to be determined from the circumstances of each particular case." *Jackson v. Rogers & Wells*, 210 Cal. App. 3d 336, 349-350 (1989).

The relevant circumstances are clear. Megaphoton continued shipping horticultural-lighting equipment to its Russian affiliate well after Executive Order 14071 took effect in April 2022. A sales contract dated February 14, 2023 documents a shipment worth more than USD 100,000 from Megaphoton Inc. in China to Megaphoton LLC in Moscow (JAF No. 19). Megaphoton's Russian-language website—captured by Defendants—still advertises those products, lists Moscow

contact information, and showcases Russian projects (JAF No. 19). Trade-database records identify more than two hundred Megaphoton shipments into Russia through January 2023 (JAF No. 19).

Executive Order 14071 prohibits "new investment in the Russian Federation by a United States person" and any "approval, financing, facilitation, or guarantee" of transactions a U.S. person could not lawfully undertake (§ 1(a)(i), (iii)) (JAF No. 19). On 19 May 2023, the U.S. Treasury extended that prohibition to include the export or supply of architecture or engineering services to "any person located in the Russian Federation" (JAF No. 19). Executive Order 14024 further declares Russia's activities an "unusual and extraordinary threat" to U.S. national security (JAF No. 19).

The guarantees Megaphoton seeks to enforce would compel U.S. defendants to finance or guarantee transactions for Megaphoton entities still operating in Russia— conduct squarely forbidden by these federal measures. Megaphoton's own memorandum advising customers to route payments through non-U.S. banks "to avoid U.S. sanctions" confirms that performance would violate the orders (JAF No. 19). Because the agreements require unlawful performance, their object and consideration are illegal; under Civ. Code §§ 1598, 1608, 1667 they are void ab initio and unenforceable. Megaphoton's claims therefore fail as a matter of law.

PLAINTIFF AND DEFENDANTS' JOINT BRIEF

Dated:  July 9, 2025                                ADY LAW GROUP, PC


                                                    By:  _A. David Youssefyeh_____
                                                    A. David Youssefyeh

                                                    Attorneys for Plaintiff,
                                                    MEGAPHOTON, INC.


Dated: July 9, 2025                                 CUCHER LAW, P.C.


                                                    By:___Rob D. Cucher_____
                                                    Rob D. Cucher

                                                    Attorneys for Plaintiff,
                                                    MEGAPHOTON, INC.



Dated: July 9, 2025                                 FORWARD COUNSEL, LLC


                                                    By:___Brian M. Davis_____
                                                    Brian M. Davis

                                                    Attorneys for Defendants,
                                                    VISIONTECH GROUP, INC.
                                                    HYDROMAN, INC. and
                                                    NATURE'S MIRACLE, INC.

## **CERTIFICATION OF SIGNATURES AND APPROVAL**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I hereby attest that Rob Cucher, counsel for Plaintiff herein, and Brian Davis, counsel for Defendants on whose behalf the joint filing is submitted, concur in the content of this joint filing and have authorized the joint filing.


Date: July 9, 2025                                    By:  *A. David Youssefyeh*
                                                       A. David Youssefyeh
                                                       Attorneys for Plaintiff,
                                                       MEGAPHOTON, INC.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record.

Date: July 9, 2025

By:   *A. David Youssefyeh*
               A. David Youssefyeh

PLAINTIFF AND DEFENDANTS' JOINT BRIEF

## **<u>CERTIFICATION OF MEET AND CONFER</u>**

I certify that the parties met in person or by videoconference, thoroughly discussed each and every issue raised in the motion, and attempted in good faith to resolve the motion in whole or in part.

Date: July 9, 2025                                   By:   *A. David Youssefyeh*
                                                                    A. David Youssefyeh

PLAINTIFF AND DEFENDANTS' JOINT BRIEF